IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EPSON ELECTRONICS AMERICA, INC., <br><br> Plaintiff, <br> v. <br><br> TOKIO MARINE AND NACHIDO FIRE INSURANCE CO. LTD, etc. <br><br> Defendant. | No. C 12-4592 RS <br><br> **ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

This is an insurance coverage dispute. The insured, plaintiff Epson Electronic America, Inc. is one of dozens of entities alleged to have engaged in a price-fixing conspiracy for TFT-LCD (thin film transistor liquid crystal display) flat panels incorporated into various products. Nearly thirty cases regarding the alleged price-fixing conspiracy were consolidated in a Multi District Litigation proceeding in this district, styled as *In Re: TFT-LCD (Flat Panel) Antitrust Litigation*, Case No. M07-1827 SI ("the TFT-LCD action"). Of those cases, twelve alleged violations of the unfair competition or deceptive trade practice statutes of various states. Epson contends that the allegations made against it in those twelve cases, which it characterizes as "State Law False Advertising Cases," entitle it to receive a defense from its liability insurance carrier, defendant Tokio Marine and Nichido Fire Insurance Co. Ltd. (U.S. Branch), dba The Tokio Marine and Fire

Insurance Co., Ltd. ("Tokio"). Epson and Tokio agree that their dispute is amenable to disposition on summary judgment, and they have brought cross-motions for that purpose.

Epson's attempt to characterize the claims made in the underlying litigation as implicating the "advertising injury" provisions of its insurance policy is simply too strained. Accordingly, its motion for summary judgment will be denied and Tokio's will be granted.[1]

## II. BACKGROUND

### A. The underlying cases

The so-called "State Law False Advertising Cases" are brought by plaintiffs that either incorporate panels into electronic devices they make, or sell products incorporating the panels. They allege that all underlying defendants are liable for damages under state unfair competition and deceptive trade practice statutes because they made false promotional "public statements" giving untrue reasons for the relatively high prices they were charging for their products, when declining prices would have otherwise been expected.

The suits allege defendants:

> [F]alsely reported that price increases resulted from "acute" shortages [and] have used a variety of other purportedly market-based explanations for price increases in order to conceal their conspiracy [including] blamed the sharp price rises of early 1999 on under-capitalization: "Prices have dropped at a steady rate over the past couple of years to the point where it was difficult to continue the necessary level of capitalization. The [low prices] have starved the industry.

The alleged misconduct of the defendants included:

> (1) "report[ing] [to the media] that their fabs [fabricating plants] were operating at full capacity even when they were not, in order to create the appearance of a supply shortage";
>
> (2) publicly stating that "demand by far is outstripping our supply capability," predicting that "prices will continue to increase until a reasonable balance is

---

[1] Epson's motion to submit a surreply is granted, and its arguments in the surreply have been considered.

achieved";

(3) stating that "price increase[s resulted] from increased demand during the holiday season,"

(4) claiming that prices were high because of "component shortages due to the late expansion of 5th generation production lines," and "new demand from the replacement of traditional cathode ray tubes with LCD monitors"; and

(5) asserting there was "much stronger demand for large-size LCD TVs than expected, so LCD TV supply is likely to remain tight throughout the year."

Several of the underlying cases claim damages under Florida Stat. § 501.204, declaring unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Others seek recovery under Hawaii Rev. Stat. § 480-2(a), which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Further of the underlying cases invoke Massachusetts Gen. Laws, 93A § 2(a), New York Gen. Bus. Law § 349, and North Carolina Gen. Stat. § 75-1.1(a), all to similar effect.

B. <u>The insurance provisions</u>

There is no dispute that Tokio issued a Commercial General Liability Policy to Epson during a relevant time period. Epson insists there is a possibility that the underlying plaintiffs are pursuing a covered claim, and that therefore Tokio has an obligation to provide a defense, under "Offense (f)" of the coverage for "advertising injury." The relevant provisions include:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.

. . . .

SECTION V – DEFINITIONS

    1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

. . . .

3

> 14. "Personal and advertising injury" means injury . . . arising out of one or more of the following <u>offenses</u>:
>
> . . . .
>
> <u>f. The use of another's advertising idea in your "advertisement"</u> . . . .

## III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker*

4

*Magazine, Inc.*, 501 U.S. 496 (1991) (*citing Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

In this case, the parties are in agreement that no material facts are in dispute. The issue is, given the undisputed facts, which party is entitled to judgment as a matter of law.

## IV. DISCUSSION

The California Supreme Court has held that "a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1081 (1993) (citing *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, (1966)). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287 (1993). Even though "an insurer has a duty to defend only if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insurance policy," *Lomes v. Hartford Fin. Svcs. Group, Inc.*, 88 Cal.App.4th 127 (2001), "the insured need only show that the underlying claim may fall within the policy coverage; the insurer must prove it cannot." *Montrose*, 6 Cal.4th at 300.

"Whether an insurance policy provides [the] potential for coverage and, thus, a duty to defend exists, is a question of law for the court to decide." *Lomes*, 88 Cal.App.4th at 132. Such a determination is typically made by comparing the allegations of the complaint to the policy terms. *Id.* at 132. Importantly, the duty to defend, "does not depend on the labels given to the causes of

action in the third party complaint; instead it rests on whether the *alleged facts* or *known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy." *Atlantic Mutual Ins. Co. v. J. Lamb, Inc*., 100 Cal.App.4th 1017, 1034 (2002) (emphasis in original).

Here, Epson relies heavily on the principle that the duty to defend can be extremely broad, and that only some slight "possibility" of coverage must exist to give rise to a defense obligation. Epson is correct, of course that neither the labels nor the theories of the underlying action are dispositive—the issue is whether the *facts* pleaded *might* support a covered claim. Additionally, the inquiry is not whether the underlying plaintiffs' claims are tenable, factually or legally, because an insurer must provide a defense even against frivolous claims, if the nature of the claim is within the insuring provisions of the policy and no exclusion plainly applies.

That said, for there to be a potentially covered claim, the facts alleged by the plaintiffs in the underlying suits (together with any relevant extrinsic facts known to Tokio) must show some injury, or claim of injury, "arising out of . . . [t]he use of another's advertising idea in [Epson's] 'advertisement.'" Epson's attempt to characterize the underlying complaints as implicating claims for advertising injury, while creative, stretches the policy language beyond any reasonable interpretation.

California courts use a three-prong analysis when determining coverage under the advertising injury coverage of a general liability policy: (1) was the insured engaged in any "advertising" at the time of the alleged injury? (2) do the allegations create a potential for liability under one of the covered offenses, and (3) is there a causal connection between the alleged injury and the "advertising"? *See Hameid v. Nat'l Fire Ins. of Hartford*, 31 Cal.4th 16, 22 (2003*); Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 600 F.3d 1092, 1098 (9th Cir. 2010). As noted, the policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

Here the specific allegations in the underlying complaints that Epson contends constitute "advertisements" are various statements by representatives of companies other than Epson, made in the media, to investors, and the like, purporting to explain price increases for TFT-LCD products.

Even assuming general allegations in the complaints referring to "all defendants" and/or extrinsic facts known to Tokio would justify an inference that Epson representatives may have made similar statements in similar contexts, characterizing them as "advertisements" is an unwarranted stretch. *See Trailer Bridge Inc. v. Illinois National Ins. Co.*, 657 F.3d 1135, 1143 (11th Cir. 2011) (CEO's allegedly misleading justifications for price increases published in newspaper article did not qualify as an "advertisement" even if they conceivably led to additional customers or supporters).

Even assuming Epson made any statements that could be considered to have been "advertisements," its convoluted argument that it potentially committed the offense of "use of another's advertising idea" is not persuasive. Epson's theory is that the "idea" of misrepresenting the reasons for price increases was already in use by other members of the alleged conspiracy prior to the time Epson began participating in the TFT-LCD market, and therefore it was "using" that "advertising idea" when it made similar statements. The policy language referring to injury arising from the "use of another's advertising idea" on its face plainly contemplates some kind of misappropriation claim—for example, where a plaintiff in the underlying suit charges the insured with having copied some aspect of the plaintiff's advertising. Even assuming, as Epson urges, that there is no reason to read the policy language so narrowly as to require that the underlying plaintiff be asserting misappropriation of its own advertising idea, there is still no basis to construe it so broadly as to sweep in the type of conduct alleged here. *See Trailer Bridge*, 657 F.3d at 1139 ("In particular, we agree with the district court's rejection of Trailer Bridge's convoluted argument that the CEO's statement deployed the advertising idea of 'another.'"); *see also*, *Rose Acre Farms, Inc. v. Columbia Cas. Co.*, 772 F.Supp.2d 994, 1003 (2011), *aff'd* by 662 F.3d 765 (2011)("We are hard-pressed to understand how use of a co-defendant's idea, as opposed to one of the plaintiffs, could be considered an 'offense.'")[2] The claims in the underlying actions are not for "use" by Epson of

---

[2] Epson points out that earlier CGL policies explicitly referred to "misappropriation" rather than "use," and it reasons that the change must have been intended to broaden coverage. Epson's proffered interpretation of the policy language, however, would effectively read out the word "offenses" from the definitional phrase "injury . . . arising out of one or more of the following offenses." All of the other subsections of paragraph 14 list various wrongful acts that satisfy the ordinary meaning of "offenses"; the clear import is that subsection (f) similarly reaches wrongful use.

7

"another's advertising idea," but for statements by defendants, perhaps including Epson, that allegedly were false and misleading. Even treating those statements as "advertisements," nothing in the policy language provides coverage for injuries arising out of the offense of false or misleading advertising.

The final element requires a causal connection between the alleged injury and the "advertising." Here, plaintiffs in the underlying actions primarily are pursuing antitrust claims, and the allegations regarding the purported conspirators' public statements about pricing pressures are offered in large part as a means for tolling the statute of limitations on those claims. As Epson points out, however, the twelve cases alleging claims under state consumer protection statutes at least arguably seek independent recovery under those statutes for injuries separate from any antitrust violations that might be proved. Even assuming a connection between the public statements and any such separate injuries, however, does not transform those statements into advertisements implicating an offense under paragraph (f) of the policy.

Accordingly, even construing the allegations of the underlying complaints liberally, and considering whether there is any *possibility* of a covered claim, nothing in the facts presented by the underlying complaints or otherwise known to Tokio gave rise to a duty to defend.[3]

---

[3] Tokio also contends it owed no defense given policy exclusions for conduct involving, knowing violation of another's rights, knowing falsity, criminal acts, and/or incorrect price descriptions. The potential applicability of these exclusions need not be decided given the absence of facts sufficient to trigger the insuring clause.

V. CONCLUSION

Epson's motion for summary judgment is denied, and Tokio's is granted. A separate judgment will issue.

IT IS SO ORDERED.

Dated: 7/19/13

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE